HAWTHORNE, Justice.
 

 Relator Charles Adjmi was adjudged guilty in the First Municipal Court of New Orleans of violating a municipal ordinance, and was sentenced to pay a fine of $50.00 or serve 30 days in jail. This judgment was affirmed on appeal by the Criminal District Court for the Parish of Orleans, and on relator’s application this court granted writs.
 

 Proceedings against relator were instituted by affidavit, made by the chief electrical inspector, which reads:
 

 “That on Monday the 26th. day of October 1964, at about 4:30 o’clock P.M., on 705 Canal Street, between Royal and Bourbon Streets, within the jurisdiction of this Court, one Charles Abjmy [Adjmi], did then and there wilfully violate Ordinance No. 17525, C.C.S. as amended Articles 5028 and 5029 relative to Sale of Electrical Appliances (Travel Iron) in violation oí New Orleans Building Code * *
 

 The two articles of the ordinance involved, insofar as pertinent, read:
 

 “Art. 5028. Basic Standards.
 

 “All electrical devices, fittings, materials, equipment, and appliances shall be those approved for the purpose for which they are used. Such electrical devices, fittings, materials, equipment, and appliances, that are constructed in conformity with the standards of and are listed by the Underwriters’ Laboratories, Inc., in their ‘List of Inspected Electrical Equipment’ shall be prima facie evidence of conformity with the requirements of this Code.”
 

 “Art. 5029. Standard Electrical Materials.
 

 “Before any electrical material, appliance, or apparatus is used, sold, replaced with new article, rented, given as a premium or placed on sale, it shall be constructed in conformity with the most approved methods to insure safety to life and property.”
 

 
 *351
 
 In granting the writs we limited our consideration to the following two contentions raised by relator:
 

 (1) The ordinance is unconstitutional because it is so vague and indefinite that it sets forth no proscribed conduct and fails to define what is and what is not prohibited thereby.
 

 (2) The affidavit is defective because it is so vague and indefinite that it fails to inform the accused of the nature of the offense with which he is charged.
 

 We first consider relator’s contention that the ordinance is unconstitutional because of vagueness and indefinite-n.ess as it sets forth no proscribed conduct and fails to define what is and what is not prohibited thereby. By order of the trial judge a certified copy of the ordinance was made part of the record in this case.
 

 'Relator’s allegation of vagueness is directed 'particularly to "the following language in Article 5029 of the ordinance: “Before any electrical * * * appliance * * * js * * * sold * * * it shall be constructed in conformity with the
 
 most approved methods
 
 to insure safety to life and property”. (Italics ours.) A reading of the ordinance as a whole discloses that it clearly shows what constitutes “most approved methods”, and therefore relator’s allegation of vagueness is without merit.
 

 In taking up relator’s second contention, aimed at the affidavit, we must at the outset emphasize that
 
 we are here considering a charge of violating a municipal ordinance, and not a charge of violating a provision of the Criminal Code or other statute enacted by the Legislature or a provision of the Constitution.
 

 In his argument that both the ordinance and the affidavit are defective for vagueness and indefiniteness, relator urges us to consider the ordinance and the affidavit in the same manner as we have considered statutes defining crimes and charges brought under such statutes, and to conclude accordingly that his constitutional rights have been violated, particularly the right guaranteed by Article 1, Section 10, of our 1921 Constitution, which provides that
 
 “In all criminal prosecutions,
 
 the accused shall be informed of the nature and cause of the accusation against him.”
 
 [1]
 
 (Italics here and elsewhere are ours,)
 

 We cannot consider relator’s case in the same manner because those charged with violating municipal ordinances are not entitled to the same constitutional protection which relator claims here. The reason is that violations of municipal ordinances are not, usually and properly, regarded as crimes, and trials for violations
 
 *353
 
 of municipal ordinances are not regarded as criminal prosecutions.
 
 [2]
 

 Article 7 of the Louisiana Criminal Code, R.S. 14:7, stipulates:
 

 “A crime is that conduct which is defined as criminal in this Code, or in other acts of the legislature, or in the constitution of this state.”
 

 The Reporter’s Comment under this article states:
 

 “This article makes it clear that the Code continues the tradition that the Louisiana criminal law is purely statutory, there being no other crimes than those defined in the Code or other statutes of the state. * * * It is intended to
 
 exclude
 
 from the designation ‘crime’ all offenders denounced in municipal ordinances.”
 

 According to Marr’s discussion of the definition of “crime”, “A crime is a wrong directly or indirectly affecting the public, to the commission of which the State has annexed certain pains and penalties, and which it prosecutes and punishes in its own name in what is called a criminal proceeding * * * and “Violations of municipal ordinances
 
 are not regarded as crimes”.
 
 1 Marr’s Criminal Jurisprudence (2d ed. 1923), sec. 26, p. 64.
 

 According to McQuillin, “Violations of municipal police regulations are not usually regarded as crimes as that term is used in our law * * * 9 McQuillin, Municipal Corporations (3rd rev’d ed.), sec. 27.37, p. 696. This is true even though the ordinance may designate or refer to the violation as a misdemeanor. McQuillin, op. cit. supra, sec. 27.38, p. 699.
 

 Article 1 of the Louisiana Code of Criminal Procedure, R.S. IS :1, provides:
 

 “A criminal proceeding is a prosecution instituted and carried on in the name of the state before a court of criminal jurisdiction for the purpose of bringing to punishment one who has violated a criminal law.”
 

 Thus a proceeding to enforce a municipal ordinance is not a criminal prosecution within this definition, and it is generally recognized that a proceeding in a municipal court for violation of a municipal ordinance is not criminal.
 
 [3]
 
 McQuillin states:
 

 
 *355
 

 “ * * *
 
 prosecutions for violations of
 
 ordinances are
 
 not'criminal/
 
 as that term is used in constitutions and statutes.
 
 And the fact that the process shall be a warrant .and that one named therein may be arrested and retained in custody or under reasonable recognizance until the next sitting of the local court, and moreover, that in event of judgment against defendant and refusal or neglect to pay the same, he may be committed, does not render the case criminal. * * * ” McQuillin, op. cit. supra, sec. 27.06, p. 610.
 

 Rhyne says of proceedings to enforce municipal ordinances: “ * * * the legal rules required for the protection of persons charged with a crime against the state do not apply, and the procedure may be more or less summary and informal.” Rhyne, Municipal Law (1957), secs. 9-13, p. 245.
 

 McQuillin gives the historical background for viewing violations of municipal ordinances differently from violations of criminal laws and for permitting a less rigid procedure and trial in municipal violation cases:
 

 “In
 
 England, notwithstanding the provision of Magna Charta that no freeman shall be taken, imprisoned or condemned but by lawful judgment of his peers or by the law of the land, it has been the constant course of legislation for centuries past, to confer summary jurisdiction upon local magistrates and justices of the peace for the trial and conviction of parties for minor police offenses, such as petty assaults and batteries, roguery and vagabondism, public drunkenness, family abandonment, etc. Workhouses and houses of correction, principally occupied by those so convicted, have been maintained, certainly from the days of Queen Elizabeth to the present time, as a part of the police system. Both the jurisdiction and the means of punishment have been deemed essential to the good government and well-being of society.
 

 “In this country there has been no time since the earliest days of the colonies that like summary jurisdiction has not been exercised, sometimes under British statutes, but more generally by virtue of laws passed by the colonial and state legislatures. The justice of the peace has always been regarded as an important functionary, and a large portion of the police power of the state has been enforced through his instrumentality.” McQuillin, op. cit. supra, sec. 27.32, p. 684.
 

 McQuillin, continuing, explains the necessity and the practicality of this view:
 

 “It is thus apparent that infractions of such local police regulations have ever been looked upon as trivial offenses, not in their essence crimes or misdemeanors, as those terms are employed in our criminal jurisprudence. In all such cases, therefore, it is entirely competent, unless the constitution forbids, to provide for summary trial without a jury, either in the municipal charter
 
 *357
 
 or by act of the legislature of the state. The necessity of summary trial of such offenses is obvious. To insure the prompt and efficient exercise of the police authority, with which municipal corporations are ordinarily clothed, the trial of offenders must be speedy and the punishment summary, which are impossible of attainment under the slow and formal methods of prosecuting by indictment or information and trial by jury. In the large cities, especially because of the vast number of such hearings daily, jury trial would be impracticable. Consequently, the procedure is of necessity almost altogether summary and is not strictly regulated. * * * ” Mc-Quillin, ibid.
 

 This manner of regarding the violation of municipal ordinances has been recognized by this court in numerous cases, as early as 1883 in the case of Mayor and City Council of City of Monroe v. Meuer, 35 La.Ann. 1192. In that case a defendant had been sentenced under a city ordinance for keeping a disorderly house, and on appeal he contended among other things that the ordinance was violative of the article of the state Constitution which provided for the prosecution of criminal offenses by indictment or information and for the right of trial by jury. In disposing of this contention the court said:
 

 “An examination of the authorities bearing on this interesting question satisfies us that offenses against ordinances passed in the exercise of the express or implied police powers vested in municipal corporations, and relating to minor acts and matters not included in the criminal statutes of the State, are not properly regarded as crimes, to which the constitutional provisions, relating to prosecutions and trial by jury, refer.
 

 “To insure the prompt and efficient exercise of the police authority with which municipal corporations are ordinarily clothed, the trial of offenders must be speedy, and the punishment summary, which are impossible of attainment under the slow and formal methods of prosecuting by indictment or information, and trial by jury,
 

 “The distinction between crimes against the State and mere violations of municipal ordinances, and the bearing of the constitutional provisions referred to, touching the respective modes or methods for the prosecution and punishment of offenders against the same, is clearly recognized by elementary writers on the subject, and confirmed by frequent adjudications. * * * ”
 

 To the same effect, see State v. Heuchert (1890), 42 La.Ann. 270, 7 So. 329; State v. Boneil (1890), 42 La.Ann. 1110, 8 So. 298, 10 L.R.A. 60; State v. Dunbar (1891), 43 La.Ann. 836, 9 So. 492; State v. Baker (1892), 44 La.Ann. 79, 10 So. 405; State v. Fourcade (1893), 45 La.Ann. 717, 13 So. 187; State ex rel. Courrege v. Mayor
 
 *359
 
 (1898), 50 La.Ann. 45, 23 So. 92; State ex rel. Holm v. Recorder (1898), 50 La.Ann. 549, 23 So. 621.
 

 On the basis of this distinction it has been consistently held that the charge of a municipal ordinance violation need not be stated with the same strictness as to form and substance as is required for charges in criminal cases.
 

 In State v. Boneil, supra, defendant was charged with violating a municipal ordinance in an affidavit which stated that on a given day in a given month in the year 1890 “at about 8:00 o’clock P.M., at the corner of
 
 Claiborne
 
 and
 
 Mandeville
 
 streets, in the jurisdiction of this court, one A. Boneil did then and there wilfully and unlawfully violate city ordinance 92 C.S. in this, to-wit: by selling illegal prize packages of tea.” The defendant there contended that the affidavit was insufficient to charge a violation of the ordinance in question, and this court answered his argument thus:
 

 “He was charged with violating ordinance 92 ‘by selling illegal prize packages of tea.’ The time, place, and date of the act complained of are specified, and we think the charge sufficiently advised defendant of the offence and the nature thereof. Violations of municipal ordinances are not usually or properly regarded as 'crimes’, in the sense in which that word is commonly used, which embraces only offences against the public criminal statutes of the state; and the laws regulating forms of proceeding, and the constitutional provisions relating to the latter, do not generally apply to the former. * * *»
 

 Particulary pertinent to the instant case is State v. Dunbar, supra. There the defendants were charged with the violation of an ordinance of the City of New Orleans in an affidavit which read as follows: “That one Caroline Dunbar and one Lydia Dunbar did (on) Friday, July 25th, 1890, between 1 and 2 o’clock P.M., on Peters avenue, between Green and George streets, (and) within the jurisdiction of this honorable court, then and there insult and abuse affiant, in violation of section 9 of city ordinance No. 3121, as amended by ordinance No. 3680.” Defendants contended that the affidavit did not comply with the article of the Constitution of 1879 which guaranteed that in all criminal prosecutions the accused shall enjoy the right to be informed of the nature and cause of the accusation. In concluding that this contention was without merit this court said:
 

 “While it may be true that the complaint lodged with the recorder is informal and does not contain the essential averments necessary to the perfection of an indictment in constitutional courts of general and unlimited criminal jurisdiction, it is a
 
 non sequitur
 
 that it is insufficient or inadequate for the purpose of such proceedings in a
 
 *361
 
 recorder’s court, notwithstanding it be a court
 
 pro hoc vice
 
 of last resort. In such courts the formalities of criminal procedure in courts of record arc dispensed with
 
 ex necessitate rei.
 

 “The charge preferred against the defendants was simply the violation of a municipal ordinance which prohibited a disturbance of the good order and decorum of the community. For the punishment of persons offending such municipal regulations the power is lodged in municipal officers, and much must be necessarily left to their sound judgment and discretion in the manner of its exercise. We regard the affidavit to be sufficient, and the appellants’ complaint unfounded.”
 

 In State ex rel. Cotonio v. Marmouget, Judge (1903), 110 La. 191, 34 So. 408, relator was charged in the Second Recorder’s Court of the City of New Orleans by affidavit alleging that “on Monday the 29th of December 1902, at No. 1302 St. Peter’s Street, within the jurisdiction of this court, one Theodore Cotonio agent, did then and there wilfully violate C.O. 127 C.S. Sec. 1 as amended by C.O. 5955 C.S. (Rel.) to failing to provide and furnish an adequate supply of water on premises which are occupied * * * Among other things the relator urged that the affidavit was vague and indefinite and did not charge him with any offense or inform him of the nature of the charge against him. In disposing of this contention Justice Provosty as organ of this court said:
 

 “The affidavit might have been made less vague and indefinite, and no harm done, but the same strictness is not required as for indictments; and it sufficiently acquaints the accused with the fact that he is charged with having failed to provide an adequate supply of water to the premises No. 1302 St. Peter street, and of having thereby violated Ordinance No. 127, Council Series, § 1 as amended by Ordinance No. 5955, Council Series.”
 

 In State ex rel. Johnson v. Thompson, Mayor (1903), 111 La. 315, 35 So. 582, relator was charged by affidavit in the may- or’s court of the Town of Ruston with the violation of a town ordinance prohibiting the keeping of a “Blind Tiger”. The affidavit charged that on a specified date relator “did, in violation of ordinance No. 15 of the town of Ruston, have in his possession a jug of whiskey within the corporate limits of the town of Ruston.” Relator objected to the affidavit on the ground that it was insufficient, and in finding this objection without merit this court stated:
 

 “We think that this affidavit was sufficient. It informed plaintiff [relator] of what the charge against him was, namely, of his having had on the day named intoxicating liquors in his possession, and having thereby violated ordinance 15 of the town of
 
 *363
 
 Ruston; that is to say, of having kept a ‘Blind Tiger.’ If the affidavit had been drawn with all the technical precision required for indictments the defendant would hardly have been more fully informed of what acts of his were complained of. As an indictment the affidavit would unquestionably be fatally defective, in that it does not charge the defendant with having kept a ‘Blind Tiger,’ but merely with having had intoxicating liquors in his possession, which is only the evidence of the offense and not the offense itself. But it is well settled that proceedings for the enforcement of the police ordinances of towns do not have to be conducted with the same attention to fullness and precision in mere matter of form as is required for the prosecution of crimes in courts of record. * * * Suffice if information is conveyed to the accused of what particular acts or facts the prosecution is based on, and that was done in this case.”
 

 See also Town of Minden v. McCrary (1902), 108 La. 518, 32 So. 468; City of New Orleans v. Griffin (1920), 147 La. 1089, 86 So. 554.
 

 The authorities which we have cited above conclusively show that this court consistently for many years held that violations of municipal ordinances are not to be regarded as “crimes” in the strict sense in which the term is used in the Constitution and the criminal statutes, that affidavits charging such violations need not be drawn with the strictness and technical precision as to form and substance required for indictments and informations, and that such affidavits will not be deemed invalid for vagueness or insufficiency if they inform the accused of the place and date of the violation and inform him with reasonable certainty of the substance of the charge including the ordinance number.
 

 In spite of the lack of precision permitted in affidavits charging violations of municipal ordinances, this court has nevertheless enunciated that there is a limit to the permissible vagueness and indefinitness, and when it considers that this limit has been overreached, it will prohibit proceedings under the affidavit. For cases in which such affidavits were held insufficient, see State ex rel. Lewis v. Arnauld, Recorder (1898), 50 La.Ann. 1, 22 So. 886; City of New Orleans v. Green (1929), 168 La. 436, 122 So. 282.
 

 We come now to a consideration of the sufficiency of the affidavit in the instant case charging the violation of a municipal ordinance of the City of New Orleans. In the light of the authorities cited above, this court cannot agree with relator’s argument that the constitutional guarantees afforded an accused who is charged with an offense against the State ought also be afforded an accused who is charged with an offense against a municipality, for the sufficiency of affidavits in cases of violation of
 
 *365
 
 municipal ordinances is not to be tested by the rules applicable to indictments, informations, and affidavits charging
 
 crimes
 
 against the State. Tested under the jurisprudence of this court, discussed above, relative to the sufficiency of affidavits charging violations of municipal ordinances, the affidavit in this case is sufficient. It gives the date, time, and place of the offense and the number of the ordinance violated. Relator could not pretend not to know that the ordinance in question was one which forbids the sale of electrical appliances except under conditions designated in the ordinance, and that by the violation of it at the time and place named was meant that the violation of the ordinance had been the sale of an electrical appliance (travel iron) in contravention of requirements of the ordinance.
 

 We are aware that there are recent cases in which this court in considering the validity of affidavits charging violations of municipal ordinances has treated such violations as criminal offenses and has tested the validity of the charge by the laws and constitutional provisions applicable to indictments, informations, and affidavits charging crimes against the State.
 
 [4]
 
 The view that such violations are not crimes and their prosecutions not governed by the procedural rules applicable to prosecutions for offenses againét the State was not urged or called to our attention, and was inadvertently overlooked by us in spite of its many years’ existence in the jurisprudence of this court. Although the results reached in these cases may have been correct, our approach to the problems presented was undoubtedly wrong in view of the well established rule, which we here reiterate and approve, that violations of municipal ordinances are not to be regarded in the same manner as violations of state criminal laws.
 

 For the reasons assigned the conviction and sentence are affirmed.
 

 [1]
 

 . This provision was also found in our Constitutions of 1879 (Article 8), 1898 (Article 10), and 1913 (Article 10).
 

 [2]
 

 . For the purpose of vesting original jurisdiction in the district courts of this state, prosecution for violation of a police jury ordinance is considered a “criminal case”. See State v. Foggin (on rehearing), 135 La. 497, 65 So. 622; Act 315 of 190S.
 

 [3]
 

 . Municipal ordinance violation cases are, strictly speaking, neither civil nor criminal, and tlie recognition of this is evidenced in the careful drafting of Article 7, Section 51, of the Constitution of 1921, wherein the jurisdiction of the city courts permitted to be created by the Legislature to replace justice of the peace courts was carefully delineated as first,
 
 civil
 
 jurisdiction, second,
 
 criminal
 
 jurisdiction, and
 
 third,
 
 jurisdiction of cases for the violation of municipal ordinances. Our scrutiny of these cases has for the most part been limited to questions relating to whether the accused was properly charged under a lawful ordinance, and we do not review the facts in these cases.
 

 [4]
 

 . For example, see City of Shreveport v. Bryson (1947), 212 La. 534, 33 So.2d 60; City of New Orleans v. Kiefer (1964), 246 La. 305, 164 So.2d 336.