221 So.2d 550 (1969)
George ROBERTS, Jr., Plaintiff and Appellant,
v.
AMERICAN EMPLOYERS INSURANCE COMPANY, BOSTON, MASS., et al., Defendants and Appellees.
No. 2615.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1969.
Rehearing Denied May 7, 1969.
*551 John W. Hebert, Jennings, for plaintiff-appellant.
Walter G. Arnette, Grenese R. Jackson, Knight & Knight, by Wm. N. Knight, Jennings, for defendants-appellees.
Before FRUGE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
Plaintiff seeks damages for unlawful arrest and for personal injuries resulting from being shot by the arresting officer. The defendants are (1) Horace J. Randolph, the officer, (2) American Employers Insurance Company, public liability insurer for the City of Jennings, (3) Willie Brown and Leroy Davis, whose complaints resulted in the alleged unlawful arrest. From an adverse judgment, plaintiff appealed.
The issues on appeal are: (1) the lawfulness of the arrest, which was made without a warrant for violation of a city ordinance relative to disturbing the peace; (2) was the arresting officer justified in shooting plaintiff in self-defense?
The facts show that on December 28, 1966 at about 8:00 p. m. plaintiff went to Haven's Lounge, a bar and care in the City of Jennings, Louisiana. A social organization, Club 21, was holding a private Christmas party in the bar room section. The bartender advised plaintiff it was a private party and refused to serve him a drink. Plaintiff refused to leave and ate some of the potato chips, which the members of the club had brought to the bar room. The members of the club objected and a disturbance ensued.
The bartender then telephoned the city police to complain that plaintiff was causing a disturbance at the lounge. However, before the police arrived plaintiff left Haven's Lounge and walked across the street to Shirley's Pool Hall, where he purchased a beer.
City Police Officer Horace J. Randolph arrived at Haven's Lounge at about 8:30 p. m. and was told that plaintiff had created a disturbance. The officer went in search of plaintiff and found him at Shirley's Pool Hall. He allowed plaintiff to finish drinking his beer and asked if he would go back to Haven's Lounge to discuss the complaint which had been made against him. Plaintiff went voluntarily.
After discussing the nature of the complaint with the bartender and the members of Club 21, Officer Randolph placed plaintiff under arrest for violation of the city ordinance against disturbing the peace. He did not have an arrest warrant.
The officer then ordered plaintiff to walk out of the lounge to the police car. There is a conflict in the testimony as to when the officer pulled his pistol from his belt holster. Plaintiff testified the officer pulled his gun before they left the lounge and held it in his back as they walked toward the police car. The officer says he did not pull his pistol until the instant before he fired it. In any event, plaintiff *552 raised his hands above his head and was walking 5 or 6 feet ahead of the officer toward the police car when the incident in question occurred.
While walking toward the police vehicle, plaintiff stopped at least twice, cursing and stating "I ain't going to no G______ d______ jail. Kill meshoot me in the back." Finally, as they neared the car, plaintiff turned around, lowered his hands and grabbed for the officer. The policeman stepped back and fired one shot from the hip, the bullet entering the lower left jaw and exiting the left rear portion of plaintiff's neck. Plaintiff recovered but suffered some permanent impairment of the use of his jaw.
LEGALITY OF THE ARREST
The first issue is the legality of the arrest. This incident occurred on December 28, 1966, just 4 days before the present Code of Criminal Procedure went into effect on January 1, 1967. The statute in effect at the time, LSA-R.S. 15:59-60, provided that a peace officer could not make an arrest without a warrant for the commission of a "misdemeanor" not committed in his presence.[1] However, defendants contend the violation of a city ordinance was not a misdemeanor within the intendment of this statute. Hence a warrant was not necessary.
LSA-R.S. 14:7 and the Reporter's Comment thereunder read as follows:
"A crime is that conduct which is defined as criminal in this Code, or in other acts of the legislature, or in the constitution of this state. * * *
"Reporter's Comment
"Statutory crimes:
"This article makes it clear that the Code continues the tradition that the Louisiana criminal law is purely statutory, there being no other crimes than those defined in the Code or other statutes of the state. Crimes Act of 1805; State v. Robinson, 143 La. 543, 78 So. 933 (1918). It is intended to exclude from the designation `crime' all offenders denounced in municipal ordinances."
In the early case of State ex rel. Courrege v. Fisher, 50 La.Ann. 45, 23 So. 92 (1898), the court said:
"Proceedings for the punishment of offenders against municipal ordinances enacted in virtue of implied or incidental powers of corporations, or in the exercise of legitimate police authority for the preservation of peace, good order, safety and health, and which relate to minor acts and matters, are not usually or properly regarded as criminal. (citations omitted) In this view, it is not essential that an affidavit should precede an arrest for the violation of a municipal ordinance, or that a formal warrant for arrest should issue."
The holding in State ex rel. Courrege v. Fisher, supra, was later modified to conform with the provisions of Louisiana Constitution of 1921, Article 1, Section 9, requiring that all criminal proceedings be commenced by affidavit, information or indictment. Town of Rayville v. Bishop, 246 La. 887, 168 So.2d 593 (1964). The court held that in view of these constitutional provisions, defendant's conviction in mayor's court for breach of the peace, without an affidavit, information or indictment, was invalid. See also City of Baton Rouge v. Mondy, 225 La. 229, 72 So.2d 488, to the same general effect. But, State ex rel. Courrege v. Fisher was not overruled insofar as it held that violation of a city ordinance is not a crime.
In City of New Orleans v. Adjmi, 249 La. 346, 186 So.2d 616 (1966) the relator was adjudged guilty in the City Court of New Orleans of violating a municipal *553 ordinance governing the sale of electrical appliances. On appeal, he contended the affidavit on which he was prosecuted was invalid for vagueness and insufficiency, citing the requirements of the Louisiana Constitution and Criminal Code. In a detailed opinion the court traced the history of the distinction between municipal ordinances and crimes defined by the State Legislature. The court concluded as follows:
"The authorities which we have cited above conclusively show that this court consistently for many years held that violations of municipal ordinances are not to be regarded as `crimes' in the strict sense in which the term is used in the Constitution and the criminal statutes, that affidavits charging such violations need not be drawn with the strictness and technical precision as to form and substance required for indictments and information, and that such affidavits will not be deemed invalid for vagueness or insufficiency if they inform the accused of the place and date of the violation and inform him with reasonable certainty of the substance of the charge including the ordinance number."
In City of New Orleans v. Cook, 249 La. 820, 191 So.2d 634 (1966) defendant was tried and found guilty in the City Court of New Orleans for violating a city ordinance relative to assault. On appeal he contended he was not given time to obtain counsel. The court again stated the distinction between municipal ordinances and criminal statutes, citing City of New Orleans v. Adjmi, supra, and held violations of municipal ordinances are not to be regarded in the same manner as violations of state criminal laws."
Under the authorities cited above, the violation of the municipal ordinance of the City of Jennings, relative to disturbing the peace, was not a "crime" within the intendment of our criminal statutes in effect at the time of the incident in question on December 28, 1966.[2]
Hence, the provisions of LSA-R.S. 15:59-60, in effect during 1966, requiring a warrant to arrest for a misdemeanor committed outside of the presence of the officer, had no application.
Following the rationale in City of New Orleans v. Adjmi, supra, and City of New Orleans v. Cook, supra, the strictness and technical precision required for "crimes" defined in our criminal statutes do not necessarily apply to city ordinances. No authority has been cited which requires a warrant to arrest for violation of a city ordinance.
Furthermore, if we consider such equitable factors as good faith, reasonable cause and fair play, these would favor a holding that the arrest in the present case was lawful. Officer Randolph did not take the plaintiff into custody until after he had completed an investigation to determine the truthfulness of the complaints. This investigation was made in the presence of the plaintiff and his accusers in Haven's Lounge. There is no question but that the officer had reasonable cause, was in good *554 faith and without malice. It is our conclusion the arrest was legal.
SELF-DEFENSE
The privilege of self-defense in tort actions is now well recognized by our jurisprudence. Where a person reasonably believes he is threatened with bodily harm, he may use whatever force appears to be reasonably necessary to protect against the threatened injury. Alexander v. McCray, 190 So.2d 463 (La.App. 1st Cir. 1966); Whittington v. Levy, 184 So.2d 577 (La. App.); Pearson v. Taylor, 116 So.2d 833 (La.App. 2nd Cir. 1959); Berryman v. International Paper Company, 139 So.2d 806 (La.App.); Wilson v. Dimitri, 138 So.2d 618 (La.App.); Brazil v. McCray, 96 So. 2d 887 (La.App.); Bethley v. Cochrane, 77 So.2d 228 (La.App.); Prosser, Law of Torts, 3rd Ed., 110-114; 16 T.L.Rev. 609 at 615. Of course, each case depends on its own facts, such as, for instance, the relative size, age and strength of the parties, their reputations for violence, who was the aggressor, the degree of physical harm reasonably feared and the presence or absence of weapons.
Dr. Edward Simon described plaintiff as a "very well developed, well nourished Negro male * * *" The facts also show that plaintiff was single, 24 years of age and weighed between 150 and 155 pounds. Officer Randolph, also a Negro, weighed 165 pounds. His age is not shown in the record, but from the fact that he had served 17 years as a peace officer, it can be inferred he was substantially older than plaintiff.
The record also shows that plaintiff had a long criminal record, including acts of violence, of which Officer Randolph was aware. Plaintiff's record in the City Court of Jennings reveals that from 1961 through 1966 he had 14 convictions for disorderly conduct, 2 for assault and battery, 1 for resisting arrest, 1 for fighting and 2 for escape. Officer Randolph testified that he knew plaintiff had 15 to 20 prior convictions, including escape and resisting arrest. Randolph himself had actually arrested plaintiff on several previous occasions. Plaintiff admitted that at the time of the incident in question he was on probation from the City Court of Jennings for a period of 5 years.
On the night of the arrest, plaintiff had been drinking. He admits having had 4 beers. After the arrest in Haven's Lounge, and while plaintiff was walking out to the police car, with his hands above his head and Officer Randolph 5 or 6 feet behind him, plaintiff cursed and made statements to the effect that he was not going to jail, that he was on probation and the judge would "throw the book at him" and that he would as soon die as go to jail. Finally, plaintiff turned around, lowered his hands and grabbed for Officer Randolph. As stated above, the officer stepped back and fired 1 shot from the hip.
Officer Randolph testified that because of his knowledge of plaintiff's past record for violence and law violation, his drinking at the time, his cursing and stated determination not to go to jail, The thought plaintiff was going to resist arrest by physical force. The officer admits he did not see a weapon on plaintiff's person, but said he didn't know whether he was armed or not. Of course, the officer had a pistol in his belt holster and if a physical fight had ensued there was always the possibility that plaintiff could have obtained possession of the gun.
Plaintiff's counsel makes much of the fact that the officer had a "slap-stick" in his pocket, which he could have used. This was a small leather device weighted with lead. Officer Randolph explained that since the slap-stick was in his pocket he did not have time to reach for it.
Of course, one of the factors to be considered in a tort action for battery is who was the aggressor. In this case plaintiff was the aggressor. He was in the officer's custody under a lawful arrest, which he attempted to resist by physical force.
*555 The mere fact that plaintiff was the aggressor does not alone require a denial of recovery, but it is a factor to be considered along with all of the other circumstances. Wilson v. Dimitri, supra.
After carefully considering all of the circumstances, we think Officer Randolph reasonably believed he was in danger of substantial physical harm and that the force which he used to resist was not unreasonably excessive. Hence, the officer's privilege of self-defense is recognized and recovery in tort is rejected.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.
Rehearing denied.
MILLER, J. recused.
NOTES
[1] Pearson v. Great Southern Lumber Company, 134 La. 117, 63 So. 759, L.R.A. 1916F, 1247; Wells v. Gaspard, 129 So. 2d 245 (La.App. 3rd Cir. 1961)
[2] The law of arrest in question here has been changed in the new Code of Criminal Procedure, which took effect January 1, 1967.

Article 213 provides:
"A peace officer may, without a warrant, arrest a person when:
* * * * * *
"(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer;"
Article 933 defines "offense" as including both a felony and a misdemeanor and states "Misdemeanor means any offense other than a felony, and includes the violation of an ordinance providing a penal sanction." Thus, under the present law, the violation of a municipal ordinance providing a criminal sanction is a misdemeanor and a peace officer can make an arrest for such an offense, although not committed in his presence, if he has "reasonable cause" to believe that the person to be arrested has committed the offense. If the arrest in the present case had been made after January 1, 1967, it would have been legal.