OVERTON, J.
 

 The three defendants, named in the title, appeal from the sentence of death pronounced against them. These defendants, together with two others, namely, Arthur Williams and Joe Anderson, were indicted by the grand jury for the parish of Orleans for the murder of William Blumstein. Anderson had not been apprehended at the time of the trial, and therefore was not tried. Williams was not brought to the bar for trial by the state, but a severance, at the instance of the state, was granted as to him. As to the remaining three, named in the title, the jury, after the case was submitted to them, returned a verdict, finding each of the three guilty as charged.
 

 The theory upon which the state conducted the prosecution is that, on the morning of November 22,1930, between 10 and 12 o’clock, the three defendants, named in the title, together with Arthur Williams and Joe Anderson, met at the home of Mose Conner, one of these defendants, and there entered into a conspiracy to rob a lottery shop, located in a colored district of the city of New Orleans, conducted by Mrs. Martha Kent, a white woman, living on Washington avenue, where the lottery was- conducted. It is the position of the state that the three defendants brought to trial agreed, at the confection of the conspiracy, that Mose Conner should go to the place where the lottery was kept, and that the two remaining defendants should follow a few minutes later, with Williams and Anderson, who were not on trial. Conner, according to the state’s theory, was to enter the room where the lottery was conducted, and, when the others arrived, Conner was to notify them if there were too many present to make it feasible to undertake the robbery, and, if there were not too many present, he was to remain in the room. It is the state’s position that, a few minutes after the arrival of Conner, Conner not having appeared for the purpose of giving notice, the two remaining defendants on trial, together with Anderson, entered the room, where the lottery was conducted (Williams remaining outside of the room), and ordered, under the protection of a drawn pistol or pistols, those present to throw up their hands, while one of the defendants grabbed the money on the table. It is the state’s theory that immediately following the robbery, with the money in the possession of one of the five, who took part in the conspiracy to rob, probably in the possession of Anderson, the five left the scene; that Franklin and Terrell, two of the defendants on trial, boarded a street ear; that, after having ridden a few blocks, two police officers drove up in an automobile, when Franklin and Terrell concluded to leave
 
 *765
 
 the car; that, as the car stopped, one of the police officers left the automobile to enter the street car from the rear, while the other moved forward to the front of the car; and that, when William Blumstein, the officer who was approaching the rear of the car, was about to enter it, he was shot to death by Terrell. It is the position of the state that this homicide was committed within the scope, and in furtherance, of the conspiracy to rob, which contemplated a division of the loot gained by the robbery. It is also the position of the state that the spoils were divided at the home of Mosg Conner on the night of the robbery. The theory of the state is supported by evidence, including the confessions of the defendants.
 

 The record presents a number of bills of exception, eighteen of which are presented by Mose Conner, thirteen by Eranklin, and three by Terrell. While all of the bills are signed by the judge presiding, yet none of them contains a per curiam, for the judge died while the bills were in his hands for his comments, but all of the evidence, as well as the objections and rulings upon which the bills rest, is in the record, including, of course, the signed bills themselves.
 

 The entire evidence introduced on the trial is in the transcript. This has caused the defendant Eranklin to file a motion in this court to expunge from the record the evidence of all witnesses heard on the trial, save such evidence as may pertain to the several bills of exception taken. While the evidence, not relevant to the bills of exception taken, is of no service on appeal, nevertheless Act No. 333 of 1926 requires the official stenographers of the criminal district court for the parish of Orleans to report the proceedings in all capital cakes in full, and to furnish the clerk of the criminal district court three certified copies of the testimony, taken in all cases appealed to this court, to be incorporated by the clerk in the transcript's of appeal. In view of this act, the court will not allow the motion to expunge. State v. Buckner, 167 La. 330, 119 So. 67.
 

 The defendant Franklin on May 27, 1932, filed an assignment of errors in this court, assigning eleven errors committed on the trial of this case. The transcript of appeal was lodged here on March 29, 1932, or nearly sixty days before the filing of the assignment. An assignment of errors should be filed within ten days after the transcript is brought to this court, which was not done here. This failure to file timely the assignment is of no particular moment, however, since, when the certificate of the officer, preparing the transcript, which is the case here, is complete, the defendant may call the court’s attention orally or in brief, at any time, to any error patent on.the face of the record, without making any formal assignment. However, an assignment cannot be based upon an error disclosed by the aid of evidence taken in the case. Code of Crim. Proc! art. 560. None of the errors assigned is based upon an error patent on the face of the record — a condition necessary to an assignment. Nine of the errors assigned relate exclusively to errors concerning the admissibility of evidence, and the remaining two to the refusal of the trial judge to give a special charge with reference to the law of accessory and an alleged error in the court’s charge on the law of conspiracy, both of which errors must be taken advantage of by bills of exception, reserved at the time the special charge is
 
 *767
 
 refused or the general charge given. However, the defendant Franklin will not suffer
 
 by
 
 this ruling, for every assignment of error has been presented also by a bill of exception duly taken and presented. The assignment is therefore surplusage.
 

 The first bill of exception was reserved by the defendants Franklin and Conner. The bill shows that, while the witness Kate Brown Jones was on the stand, the state propounded several questions to her, looking towards establishing a conspiracy to commit robbery. These defendants objected to this line of inquiry on the ground that they were charged with murder and not with a conspiracy to rob or murder. This objection was overruled. The ruling was correct. It is true that the indictment contains no express charge of conspiracy, but it does charge all three of the defendants brought to trial with murder. Where an indictment charges two or more jointly with murder, the charge involves a conspiracy, and proof of the conspiracy may be received without its being formally charged. State v. Ford, 87 La. Ann. 443, 459; State v. Gebbia, 121 La. 1083, 1104, 47 So. 32; State v. Robichaux, 165 La. 497, 115 So. 728.
 

 The second bill of exception was taken by Mose Conner alone. It relates to circumstances surrounding the confession of the defendant Eli Terrell. The ground for it arose while Capt. Burns, of the police force, was on the witness stand. Conner asked Burns-if he meant to tell the jury that, after he had held Terrell in custody for five or six days, and after Terrell was confronted with witnesses from day to day, all of a sudden Terrell informed Officer Balser that he wanted to confess to a murder. To this the witness replied, “Yes, sir, I will tell you why.” Conner then objected to the witness’ going further with his answer, Conner submitting that the answer was responsive to the question, and that he was interested in nothing more, the state insisting, at the same time, that the witness be permitted to complete his answer. The court ruled that the witness should be permitted to do so, and the state then asked the witness to continue with his answer. Conner then objected to evidence concerning anybody not connected with the case. The court overruled this objection. The bill of exception carries the incident no further. It is therefore defective, in not giving the answer of the witness, unless we read into it what transpired thereafter, from the stenographic notes, constituting the basis for the bill. So doing, we find that the witness continued his answer by saying: “This man, Lea (referring to an entirely different matter), got conscience stricken about killing this woman, and after Lea made up his mind to confess, that just tempted Terrell to make his open (probably own) confession.” Conner objected to this answer upon the ground of irrelevancy and upon the further ground that the witness was giving his opinion, and asked the court to instruct the jury to disregard the answer. The state then joined in the request that the jury be instructed to disregard the answer of the witness. The court then gave the desired instruction, to which no exception was taken. The instruction, in connection with the request of Conner and of the state, destroys the bill.’
 

 Bill .of exception No. 3 for Conner, and bill No. 2 for Franklin, bring before the court
 
 *769
 
 a question propounded to Officer Kusmaur, on cross-examination, by the defendant Terrell. The question was: “What kind of a sore was that on his face (referring to Terrell’s face) ?” On objection made by the state, the court ruled that the question was inadmissible, as it presupposes a fact not proven. The transcript of evidence, attached to the bill, then shows that counsel for Franklin properly put the question in a different form by asking the witness: “Did you see a sore on Terrell’s face?” -To this question the witness answered, “No, sir.” The answer of the witness is destructive of the bill. Nevertheless, it is urged that the ruling of the court had the effect of precluding counsel from establishing facts connected with Terrell’s appearance and of testing the credibility of the witness. This is incorrect, and the record does not support counsel in that respect. The bills are without merit.
 

 Bill No. 4 was taken by Conner alone. The witness, Capt. Burns, of the police force, was on cross-examination, when questions were propounded to him to elicit if he had ever known Conner to be in trouble or to have been arrested in his precinct. On objection made by the state, the evidence was ruled to be inadmissible. There is no error in the ruling. The questions' were asked when the state was laying a foundation for the admission in evidence of the confession of Conner. If evidence of the reputation of Conner was admissible at that time, Conner nevertheless was without right to show it, either as a defendant or a witness, by proving that he ' had never been in trouble or arrested, but could show it only by establishing his general reputation in the community in which he lived.
 

 We shall omit for the present bill No. 5, taken by both Conner and Franklin, and shall consider bill No. 6, taken by the same defendants. This bill shows that the state placed on the stand Albert Granzin, an assistant district attorney, for the purpose of proving an alleged confession made by the defendant Franklin. Granzin testified that the confession was taken by him in shorthand, and was later transcribed by him in his office on a typewriter, and that it was not read to Franklin nor signed by him. Upon objection made, it was ruled that the transcribed copy of the stenographic notes was inadmissible. The state then undertook to prove the confession as an oral one; Granzin using his transcription of the notes to refresh his memory. To this course, Conner and Franklin objected, both insisting that the stenographic notes were the best evidence, and as such should be produced. Both also objected to the confession on the grounds that it was not read to Franklin, when taken down, .and because Franklin was not warned that the confession would be used against him, and also because to admit the confession would violate article 450 of the Code of Criminal Procedure.
 

 As Franklin’s confession was not signed by him, it is not considered, in law, a written confession, and stands in the same position as an oral one. In fact, without' his signature to the confession, evidencing that it is his, the only way that it may be proven is by oral evidence. It was therefore unnecessary to produce the stenographic notes, if they were in existence, as the best evidence. The case of State v. Murphy, 154 La. 199, 204, 97 So. 397, cited hy Franklin, does not support the position taken by him and Conner. In the case at bar the stenographic notes
 
 *771
 
 were called for on the mistaken theory that they were the best evidence. The court in the Murphy Case did not rule that the stenographic notes should have been produced upon the theory that they were the best evidence, but upon the theory that there seemed to be a difference between the notes and the confessions offered, and upon the theory that the defendants there desired to inspect the notes, so as to determine whether to avail themselves of the difference.
 

 As to the refreshing of the witness’’ memory, it was permissible for the witness to refer to the transcription of his stenographic notes, made by him, for that purpose. Code Cr. Proc. art. 375. Although, under the article cited, it is immaterial when or by whom the memorandum or transcription was made, nevertheless it may be said that the transcription was made upon the return of the witness to his office and by him.
 

 Because neither the stenographic notes nor their transcription was read back to the accused for approval does not affect the right of the witness to use either for the purpose of refreshing his memory.
 

 As to the failure to warn Franklin, before he made the confession, of the use that would probably be made of it, there is no law in this state requiring that, before a confession is received, the prisoner be warned that, if given, it will be used against him.
 

 As to the objection that the admission of the confession would be violative of article 450 of the Code of Criminal Procedure, because, unless the stenographic notes were produced, the entire confession would not get before the jury, it may be said that the objection is not well founded. The record shows that the witness was able to give the entire substance of the confession, which is all that the law requires.
 

 This bill, so far as it relates to Franklin, contains another objection, which-will be considered in passing on bill No. 8, taken by Conner, and also still another objection, touching the voluntariness of Franklin’s confession, made by both Franklin and Conner, which will be considered later.
 

 Bill No. 7 (Conner’s number) was taken by Conner and Franklin. At the time the bill was reserved, Franklin was on cross-examination, as appears from the notes of evidence, on the question of the admissibility of his alleged confession. He had testified, in chief, that he was beaten while in the police station, and, on cross-examination, he had denied having been questioned by any one or having made a confession. The state then asked the witness why he was beaten. To this the witness gave a brief account of his alleged treatment in the police jail. The witness was again asked by the state whether he had answered any questions propounded to him -by any one, and he again denied that he had. The state then propounded to him the following question: “Then, if they (referring to the police) never •asked you any questions and you never made any answers, why did they beat you?” Counsel for Franklin then objected to the question without assigning a reason, and Conner objected to the question on the ground that no statement, that is, confession, had been introduced. The overruling of the objections by the trial court was correct. The questions were admissible on cross-examination in an effort to show that, notwithstanding Franklin’s denial, he had made a confession or
 
 *773
 
 statement. There is no merit in the objection that the statement had not been introduced in evidence. The very purpose of the examination was to lay the required foundation for introducing the statement in evidence.
 

 The foregoing bill contains another bill. Officer Balser was sent to arrest Franklin, and arrested him and brought him to the police station. The state propounded questions to Franklin to elicit whether or not he had any conversation with Balser on that occasion, to which he replied that he had not. The questions were objected to on the ground that the evidence should be restricted to the alleged confession by Franklin. It was not the purpose of the questions to go beyond such restriction. As there was evidence to the effect that the confession was made shortly after Franklin reached the police station, and, as the burden was on the state to show that the confession was voluntary, it was proper for the state to bring out on the cross-examination of Franklin any fact that it might be able to, showing that the confession was voluntary, and not induced by promises. This seems to be all that the state was undertaking to do.
 

 Bill No. 8, Franklin’s number, and No. 7, Conner’s number, present an inquiry into the propriety of permitting the state to propound to the defendant Franklin, on cross-examination, during the laying of the foundation to admit his confession in evidence, the following question, to wit: “Were you ever arrested for inciting a riot?” To this question Franklin answered, “No.” Having answered in the negative, he was not injured by the question. We therefore need go no further with the inquiry.
 

 Bill No. 8, Conner’s number, and a part of bill No. 6, Franklin’s number, were taken to the refusal of the trial court to permit, over the objection of irrelevancy, the following question to be propounded, on cross-examination to the witness Burns, to wit: “Were-any other confessions taken that afternoon?”' The question was properly ruled out. It was. irrelevant.
 

 We shall pass for the present bill No. 9, by Conner and Franklin, and shall consider bill No. 10, taken by those defendants. This bill shows that James Taylor, while on the stand in behalf of the state, in response to certain questions propounded to him by the assistant district attorney, gave evidence tending to establish a conspiracy among four of the accused, including the three defendants brought to trial, to rob Mrs. Kent’s lottery shop. -This evidence implicated Conner and Franklin, and both objected to it substantially on the ground that they were not charged with a conspiracy, but with murder, and that evidence other than that to establish murder is inadmissible. The objection was properly overruled. As we held, in considering the first bill, the joint charge against the- three involves conspiracy. If, as contended by the state, the murder was committed in furtherance of and within the scope of the conspiracy to rob, by one of the conspirators, his act would be deemed the act of all members of the conspiracy. The purpose of the evidence was to establish the conspiracy in order to show that all three on trial were guilty of the murder.
 

 Bill of exception No. 13, taken by Comner, was reserved when Officer James Kennedy, of the police force, was on his examina
 
 *775
 
 tion in chief. The state had placed upon the stand a number of police officers to show that Terrell was not beaten, or that third degree methods were not .used upon him to extort a confession. Franklin objected to the state’s placing on the witness stand officers admittedly not present, or near the police station, at the time of the confession, on the ground of irrelevancy. Kennedy was not at or near the police station when the confession was made. Terrell, however, had been in the station some five or
 
 six
 
 days before he confessed, and, during a part of the time that he was there, Kennedy served at the station on police watch. The state, in laying the foundation for Terrell’s confession, was seeking to show by all officers who had been on duty, while Terrell was confined in the station, that no promises, duress, or threats had been used to obtain a confession from him. The course, pursued by the state, was proper. The examination of these police officers was in accord with the ruling in State v. Scarbrough, 167 La. 484, 496, 119 So. 523.
 

 Bill of exception No. 17, taken by Conner, presents to the court an objection to the introduction in evidence of a pistol, said to have been owned by Conner, and returned to him on the morning of the murder. The state had offered evidence to show that, on the Saturday before the homicide, Conner had pawned this pistol to a' groceryman to secure a loan of $1.25. - On the following Saturday, which was the day of the robbery and homicide, it was shown that Conner had secured the return of the pistol, and that it was delivered to him at his home shortly over an hour before the robbery. There was evidence . identifying the pistol. The pistol was admissible in evidence to show what pistol the evidence related to and to show preparation for the robbery, for which it was introduced.
 

 Bill No. 1, taken by Eli Terrell, bill No. 4, taken by Franklin, and bill No. 12, taken by Conner, were reserved to the admission in evidence of the confession of Terrell. Each of the three defendants has reserved a bill to the admission of the confession, although the court, when the confession was admitted, instructed the jury, as it did when the remaining confessions were received, that the confession could be used against only the party who made it. Each of the remaining defendants, however, has reserved a bill, probably -upon the theory that each anticipated that a similar confession would be received against him also, and, if such occurred, and if each confession. showed that it contained admissions of fact, showing that each against whom the confession was received was a party to an understanding to rob. a certain person, the admission of each to the same fact would strengthen the proof of the alleged conspiracy, without violating the instruction of the court, and besides, as the state was relying upon the position that Terrell, as a member of the conspiracy, murdered Blumstein, in furtherance of the conspiracy, the rejection of his confession, under the objections urged, would weaken, if not destroy, the case against them. The grounds of the objections to the admissibility of the confession, which were overruled, are that it was not free and voluntary, and that the defendants are on trial for murder, and no conspiracy is charged in the indictment.
 

 The confession of Terrell is in the form of questions and answers. It is unnecessary to reproduce it here. To briefly outline it, he confesses to the formation of the conspiracy
 
 *777
 
 at Conner’s home, and. of his part therein. He confesses to the robbery of the lottery shop and to his part therein. He confesses to giving Anderson the money which he grabbed from the table, and to receiving the pistol Anderson had. He confesses to having run several blocks with Franklin and to haying, with Franklin, taken a street ear. He confesses that, after the street car had proceeded on its way several blocks, it stopped, and that, when it did so, a white man started to enter it, whom he shot with the pistol, received by him from Anderson. He confesses that he then left Franklin and went to Conner’s house, and, upon reaching the house, he found that Anderson was there; that Anderson gave him $20, and that he returned to Anderson the pistol he had received from him.
 

 Franklin was the first one of the defendants arrested. He was not arrested until some sixty days after the homicide, and then not for the killing of Blumstein, but for shooting at a policeman in an attempt to escape from a robbery or attempted robbery on the streets. This circumstance is mentioned, because it may have possibly suggested to the police force that Terrell was implicated in the robbery of the lottery shop and in the homicide that followed, although this is not known.
 

 The last objection urged to the admission of the confession, namely, that no conspiracy is charged, has been considered elsewhere in this opinion, whatever bearing, if any, it may have upon the admission of the confession. It is therefore needless to consider it again. Hence, so far as relates to the confession of Terrell, all that remains to be considered is whether or not the confession was voluntary.
 

 Notice that Terrell desired to confess was given Oapt. Burns, of the police force, by Officer Balser. Balser says that, on the morning of January 27, he went into the cells to get a prisoner, Shade Lea, to take him to headquarters, and that, while he was on that mission, Terrell, who was also confined in the cells, called him and told him that he wanted to make a confession. Balser notified Oapt. Burns of Terrell’s statement. The district attorney’s office was then notified, and, in a short while, Assistant District Attorney Luzenberg, together with Detective Malone and Oapt. Daniels, went to the station. The confession was then taken, Terrell being first asked whether he desired to confess, and Terrell replying in the affirmative. In receiving the confession, the questions were propounded by Luzenberg, and Malone reduced the questions and answers to writing on a typewriter. The confession was then read to Terrell and signed by him.
 

 Before the confession was offered, the state placed on the stand Oapt. Bums, Detective Malone, and Oapt. Daniels, who were present at the making of the confession. Each testified that no violence, threats, promises, or inducements were offered Terrell to confess. Oapt. Bums testified that, during the five days Terrell was being held at the station, while the killing of Officer Blumfield was under Investigation, Terrell was brought down, on several occasions, for the purpose of having witnesses look at him, with the end in view of identifying him as the slayer of Blumstein, if such he was, and that, during that period, he saw Terrell several times a day, and that Terrell was treated properly during his incarceration.
 

 
 *779
 
 Luzenberg, the assistant district attorney, was not put on the stand, because of his absence from the city. It may be observed, however, that there was no occasion to delay the case for him or for him to have remained in the city, since it is amply shown that he offered no inducement to, and used no duress on, Terrell to testify.
 

 The state, then continuing with the laying of the foundation, put on the stand eleven policemen who were on duty at the station from and including January 22, the day of Terrell’s arrest, to and including January 26, the day prior to the confession, from 3 p. m. to 11 p. m. Each testified that no threats, inducements, or violence Were used against Terrell by them or by others during their watch. The state then put on the stand four policemen, who had served on watch each day Terrell was incarcerated, including the day of the confession, from 11 p. m. to 7 a. m. Each testified that no force, threats, duress, or intimidation, or promises of any nature were offered by them to, or made against, Terrell to induce him to confess, nor were any offered or made in their presence. The state also put on the stand Corporal Scherer and Officer Balser, who were on watch at the police station on the days that Terrell was incarcerated there, including the day of his .confession, from 7 a. m. to 3 p. m., which includes the time of his confession, and both testified that no promises, inducements, force, or threats were used, or made, by them, or in their presence, to induce Terrell to confess. To this may be added the evidence of Capt. Bums, which is to the same effect.
 

 The state having here rested its case, as to the laying of the foundation for the admission of the confession, Terrell was placed on the witness stand in his own behalf on the question as to whether his confession was voluntary. He testified that, after his arrest, the police told him that he knew something about the murder of Blumstein; that, upon his denying that he did, they whipped him, cut his ear with brass knueks, hit him on the back of the head with a pistol, stripped him, and told him that they were going to burn his side; that, on the day the confession was made, Oapt. Burns knocked him on the head, knocking him down; that he was then carried into a little room, where they gathered around him, threatening to whip him; that at the time the confession was made he had been thrown on the floor; that the officers present had his hands and legs twisted; that he was stripped of his clothing on that January day; that the officers present had a red hot poker with which they threatened to burn his side, if he did not confess; that he had been beaten for six days and nights; and that he was naked when he signed the confession, and signed it, because he was beaten.
 

 Luring the cross-examination of Terrell, the state called in some twenty-eight policemen, in squads of five or less, and confronted Terrell with them. Terrell testified that he recognized all of them as having beaten him with the exception of one, concerning whom he was not certain. During the course of his cross-examination, Terrell stated that police came, from other precincts and some from the traffic division to beat him.
 

 Terrell offered no other evidence than his own to substantiate his position. A number of the policemen, who were pointed out by Ten-ell as having beaten him, testified in chief, on the laying of the foundation, that they had offered him no violence nor made any threats
 
 *781
 
 against him. With this evidence before the court, the court ruled that the confession was freely and voluntarily made.
 

 It does not appear that there was error in the ruling of the court. The evidence of Terrell is incredible within itself. The statement that some twenty-eight officers beat him each day, from time to time, day and night, during a period of five or six days, is unbelievable. The vast weight of the evidence shows that the confession was made voluntarily, and overthrows Terrell’s statement. The record supports the statement that no signs of violence were noticed on Terrell at or before the confession. The finding by the trial court, involving, as it does, a question of fact, should not be disturbed, unless it is clearly against the weight of the evidence. State v. Porteau, 52 La. Ann. 476, 26 So. 993; State v. Woods, 124 La. 738, 50 So. 671; State v. Bourgeois, 158 La. 713, 719, 104 So. 627, 629; State v. Mitchell, 168 La. 454, 122 So. 579. In the Bourgeois Case, it was said that “this rule is no longer an open question in the jurisprudence of this state.”
 

 Bill No. 9 was reserved by both Franklin and Conner. It contains some three exceptions, two of which have been considered already — one in passing on bill No. 1, and the other in passing on bill No. 6. The remaining exception, shown in the bill, presents the question whether the ruling of the trial court is correct in holding that the confession of Franklin was voluntary.
 

 Franklin’s confession was testified to by Assistant District Attorney Granzin. The confession admits the confection of the conspiracy-at Conner's home to rob the proprietress of the lottery shop. It describes the manner in which the conspirators entered the place and how the robbery was conducted, including the part Franklin played in it. It admits that he and Terrell, after the robbery, boarded a street car; narrates their movement to leave the ear, and describes the shooting by Terrell of Blumstein. He admits that on the night of the robbery he went to Conner’s house, where he received about $10.
 

 The evidence shows, as stated substantially in passing on bill No. 6, that Assistant District Attorney Luzenberg propounded the questions to Franklin, and that the questions and answers were taken down in shorthand, and later transcribed in the district attorney’s office by Granzin, though never presented to Franklin for signature. The evidence of the contents of the confession was testified to by Granzin, after refreshing his memory from the transcription of the notes.
 

 Almost immediately following the confession of Terrell, which implicated Franklin, the latter was arrested by Officer Balser. On Franklin’s arrival at the police station, according to,the evidence of Capt. Burns and Corporal Scherer, Franklin was confronted with Terrell. According to the evidence of Capt. Bums, when Franklin was so confronted, Terrell, Without having been addressed, said: “That’s the man. He is one of the men that was with me.” According to the evidence of Scherer, Conner was also present, and both Terrell and Conner said: “We told our part,” and Franklin replied: “Veil, I will tell what I know,” and then made his statement on the arrival of members of the district attorney’s office.
 

 Burns and Scherer testified that no force, threats, or promises were used to induce
 
 *783
 
 Franklin to confess. Balser, who arrested Franklin, and who was at the station, up to within forty-five minutes before the confession was made, the confession having been made within an hour after the arrest, testified that he used no force, threats, or inducements to induce Franklin to confess.
 

 The defendant then took the stand in his own behalf on the question of the admissibility of the confession. He testified that he was arrested by Officer Balser on January 27, 1931; that, when he arrived at the police station, Oapt. Burns told some policemen to go up stairs and bring him two barrel staves; that two policemen took the staves and that three of them took hold of him, and one of them hit him on the side of his stomach, and another hit him on the leg; that he had a mark on his leg as a result of the blow; and that he did not see Terrell until after he was locked up In the evening. On his cross-examination he denied that any one had asked him any questions, and that he had given any answers, or that he had confessed. He also said that Burns put his hand in his pocket and pulled out a pistol, stating that he had a good mind to kill him. He denied having seen Granzin, who testified that he took down the questions and answers, in receiving Franklin’s confession, at the police station. A number of policemen were brought into the courtroom, and Franklin was asked.to pick out those who had beaten him. He picked out Officers Kennedy and Maylin. He pointed out Corporal Scherer and Officer Drews as having held him while the other officers beat him.
 

 Maylin, in surrebuttal, denied that he had beaten Franklin, and said that he was not in the precinct station on the date of the confession. Kennedy, also in surrebuttal, denied that he had ever struck Franklin, and said that he did not call at the station on the day of the confession until 3 p. m., which was after the confession had been made. Officer Drews testified that, on the day of the arrest and confession of Franklin, he was assigned to the detectives’ office, that he was not at the police station on January 27, from 12:30 o’clock on — the day and hour of the arrest of Franklin — and did not report at the station until the next day. Scherer was not put on the stand again, as he had testified. Granzin, the assistant district attorney, testified that, when he reached the station to receive the confession, Franklin and Terrell were together; that Franklin did not appear to be nervous, and showed no signs of having received a severe beating.
 

 The evidence, we think, shows that Franklin made a confession, and did so freely and voluntarily. Certainly the evidence is not such as to justify us in disturbing the ruling of the trial judge.
 

 Bill No. 5 was reserved by Conner and by Franklin. It relates to the admission in evidence of the confession of Conner. It presents for consideration objections to the admission of the confession on the ground that it does not involve criminal intent, but purports to be a mere admission of facts as distinguishable from an admission of guilt, and was not free and voluntary, but made under the promise of reward and immunity. Franklin adds another objection, which was disposed of in bill No. 1, and which it is unnecessary, therefore, to consider again, assuming, without so deciding, that the objection has
 
 *785
 
 some possible bearing on tbe admission of tbe confession. This objection is that tbe confession is not. admissible, because no conspiracy is charged.
 

 It may be said, in passing, that the court, in admitting this alleged confession, as it did in admitting the other confessions, restricted it to the one making the confession, and so instructed the jury.
 

 The alleged confession is more of a statement of facts, incriminating Terrell, Franklin, and Anderson, and exculpating Conner,' than it is a confession. In fact, in it Conner does not admit a guilty part in the conspiracy or in the murder, although in it he admits that Anderson gave him $5 “out of the hold-up money,” when the money was divided at his house, from which the conspirators left to commit the robbery, he preceding them to a lottery shop, with knowledge of the contemplated robbery.
 

 The jury likely connected Conner with the conspiracy on the evidence of James Taylor, outlined in considering bill No. 10, together with the admission that he went to a lottery shop, with knowledge of the contemplated robbery, without making that knowledge known to any one, and upon his statement that he received $5 out of the hold-up money, which was divided at his home.
 

 The statement, described above, was made by Conner some ten minutes after his arrival at the police station. He was not at home when the officer called to arrest him, after Terrell had implicated him in the conspiracy and robbery, but the officer left word at Conner’s home for him to report at the precinct station, as Capt. Burns wished to see him. As he was known to have been present at the scene of the robbery, Burns had used him, though in vain, to identify suspects.
 

 Franklin went to the police station in response to the notice. Upon his arrival, or quite soon thereafter, he was confronted with Terrell, who, in .the presence of Conner, said that Conner was the man in whose house the robbery was planned. Conner then expressed a willingness to make a statement, and made the one described, the 'questions having been propounded by Capt. Bums and they, with the answers, written down by Police Clerk Soulant, and signed, on completion, by Conner.
 

 The bill of exceptions does not set forth that any force or violence was used to secure the statement, but states that it was obtained under a promise of reward and immunity. Nevertheless, the state introduced a number of witnesses to show that no force, violence, duress, or promises of any nature were used to obtain the statement, and the witnesses so testified. Conner testified that, upon his arrival at the station, he remained there about ten minutes, until the police had finished taking the confession of Terrell, behind closed doors, in the office of Burns; that Terrell was then taken upstairs, and that he (Conner) was then taken into Burns’ .office, where, in a conversation had with Assistant District Attorney Luzenberg, Capt. Burns, and Officer Jim Burns, Luzenberg said to him tha t, if he told him as much about the case as he could, he would give him “a break on it,” and that he then made the statement.
 

 Aside from the improbability of any such promise having been made, followed by a prosecution, the evidence is clear that no such promise was made. Capt. Burns testified that
 
 *787
 
 Luzenberg was not present at the time Conner’s confession was made, and that he did not arrive until after the taking of the confession was completed. Corporal Scherer denied that Luzenberg made any such promise, but, after wavering as to whether Luzenberg was present at the time of the statement, finally said that he was uncertain as to whether he was there, as there were so many in and out, and Luzenberg was there oft and on during the day. Granzin, one of the assistant district attorneys, testified that he went to the police station at about 1 o’clock p. m. on January 27, 1931, in company with Luzenberg, Capt. Daniels, and Detective Malone; that neither he nor those who accompanied him heard any part of the statement, made by Conner, as the statement had already been made and signed, when they reached the station. Detective Malone testified that he, Daniels, and Luzenberg went to the police station when Terrell’s statement was taken;. that, after its completion, the three returned to the district attorney’s office; that, when the three left, Conner had not been arrested; and that he knows nothing of the statement of Conner. Officer Bonner testified that Luzenberg was not present when Conner’s statement was made, though incidentally it may be observed that he says Granzin was present, in which particular he is in direct conflict with Granzin.
 

 We shall consider the first objection urged to the admissibility of Conner’s statement, namely, that the statement does not involve any admission of a criminal intent, and is therefore not a confession. Granting that it involves no such intent, this is no reason why it should not be received. It certainly contains statements having some tendency to connect him with the conspiracy. Such a statement is admissible in evidence. State v. Rini, 151 La. 163, 174, 91 So. 664; State v. Dreher, 166 La. 924, 963, 118 So. 85; State v. Herman Taylor et al., 173 La. 1010, 139 So. 463. The statement, within the intendment of the Code of Criminal Procedure, is not a confession, because it does not involve criminal intent or an admission of guilt, but is an acknowledgment of facts, though largely of an exculpatory nature, which has a tendency to establish guilt. Such being the ease, it is immaterial, according to the Code, as relates to the admissibility of the statement in evidence, whether or not it was procured by the making of a promise, for article 454 of the Code of Criminal Procedure reads: “The rule that a confession produced by threat or promise is inadmissible in evidence does not apply to admissions not involving the existence of a criminal intent.”
 

 Let us, however, overlook the distinction between an acknowledgement of facts, not involving a criminal intent, and a confession, and treat the statement as a confession. So doing, we have no hesitancy in holding that the statement was freely and voluntarily made, and made without promise of reward or immunity, or intimation of such. The slight contradictions in some parts of the evidence are evidently due to the fact that three statements or confessions were taken at the police station that day, in comparatively quick succession, which caused the minds of two of the witnesses to become slightly confused.
 

 Terrell’s bill No. 2 was taken by him to the action of the court in permitting the state
 
 *789
 
 to bring out more than once who propounded the questions to Terrell in the taking of his confession. The matter was one resting in the discretion of the trial court. The inquiry was not irrelevant, as urged, in this bill, by Conner.
 

 Bill No. 11 was taken by Conner to the argument of the assistant district attorney to the jury, concerning the possession of a pistol by Conner on the morning of the robbery. The assistant district attorney said, in the course of his argument to the jury, that “Mose Conner purchased a gun that morning and this is the gun.” The record shows that Conner, instead of purchasing a gun (pistol), got his pistol out of pawn that morning. The discrepancy between the record and the statement was harmless. The important fact was that Conner procured a pistol that morning, and not how he procured it.
 

 Bill No. 14, by Conner, and bill No. 12, by Franklin, present for consideration the judge’s charge to the jury on the law of conspiracy. The objections are: (1) As appears from Conner’s bill, an exception to the exposition of the law as announced by the court regarding conspiracy; (2) an exception to the instruction that, inasmuch as the division of the money was the objective of the robbery, all' of the defendants would be guilty of murder if the killing took place before the division of the spoils, regardless of the interval or lapse of time between the robbery and the shooting, and that the presence of the other defendants would not be necessary, either in the locality or at the scene of the shooting, and regardless of the fact that the shooting was committed by only one of the defendants; (3) an exception that the court commented on the facts;
 
 (4)
 
 an exception that the defendants are charged with murder and not with conspiracy. The bill taken by Franklin shows upon its face that it is merely a general exception, without pointing out the errors complained of, to the entire charge on conspiracy.
 

 The charge on conspiracy is not less than six pages, typewritten, transcript size, in length. We find it unnecessary to incorporate it here. It is taken from the charge of the court in State v. Herman Taylor et al., 173 La. 1010, 139 So. 463, 473. Excepting the first three paragraphs'of the charge on conspiracy in this case, and excepting four short paragraphs of that charge, inserted where asterisks are found at the close of the fourth paragraph in the Taylor Case, what may be termed, with a change of names, a verbatim copy of the charge in this case will be found in the opinion in that case.
 

 The first three paragraphs of the charge in this case, not included in the opinion in the Taylor Case contain the usual definition given of a conspiracy; an instruction that it is not necessary that the agreement imported by the term “conspiracy” be a formal one; and an instruction that • conspiracies to commit crime may be proved by circumstantial as well as by direct evidence, with an additional instruction that the weight and sufficiency of the evidence to establish a conspiracy are matters for the jury, and that so is the existence of the conspiracy itself. The remaining four paragraphs not contained in the opin< ion in the Taylor Case contain an instruction that it is for the jury to determine from the evidence, which must appear beyond a reasonable doubt, whether a conspiracy has been established, and whether the defendants on
 
 *791
 
 trial were parties to it; an instruction that, if the jury found that there was a conspiracy and that the defendants were parties to it, they were at liberty to give such weight as they deemed proper to any evidence, relating to the acts and declarations of the conspirators, done or made either in the presence or out of the presence of each other, in furtherance of the common purpose and design, but done or made before the conspiracy was at an end; an instruction that, if the act or declaration -was made, after the conspiracy was at an end, then that the act or declaration should be considered only against the party who committed the act or made the declaration; and that the act or declaration should be considered only against the party who did the act or made the declaration, if the jury failed to find that a conspiracy had been proven.
 

 By reference to the Taylor Case, with the aid of these observations, the entire charge on conspiracy will be before the reader.
 

 At the outset, we may say that Franklin’s bill does not purport on its face to show, nor does the record disclose that, at the time the charge was delivered, and before the retirement of the jury, he pointed out any error in the charge, to give the judge an opportunity to correct it. While Conner’s bill points out, in one or two instances, in a rather general way, the errors complained of, and, in other instances, points them out in a specific manner, nevertheless the proceedings had at the time of the delivery of the charge, when the exceptions were reserved, show that Conner did not point out to the court a single error, now assigned by him, in his bill, barring' the alleged error of the right .to charge at all on conspiracy — a complaint which we have in effect disposed of adversely to Conner’s position, in passing on bill No. 1.
 

 The trial judge should be informed at the time the exception is reserved, and before the case is given to the jury, in wh^t respect the charge is said to be erroneous, to the end that he may correct the charge if he should find it to be erroneous. State v. Robinson, 143 La. 543, 78 So. 933; State v. Erwin, 133 La. 550, 63 So. 167; State v. Varnado, 126 La. 732, 52 So. 1006.
 

 However, let us overlook whatever defects there may be in reserving these exceptions, and consider, so far as we may, the errors later pointed out. The first exception; namely, the one to the entire charge on conspiracy, is certainly too general to be considered. The second exception, relative to the division of the money being the purpose of the robbing, and that all defendants would be guilty of murder, if the homicide occurred before the division of the spoils, regardless of the lapse of time, and regardless of the absence of one or more of the defendants from the locality or scene of the homicide, does not state correctly the charge of the judge or its import. The judge nowhere, so far as we are able to ascertain, charged the jury, as a fact, that the objective had in committing the robbery was a division of the money obtained, however manifest that may have been. The judge, however, did charge the jury as follows: “I charge you, gentlemen of the jury, that if the evidence should satisfy you beyond a reasonable doubt that a conspiracy existed between the defendants, or any two or more of them, not' only to rob Mrs. Martha Kent, but that the conspiracy, if any such existed, also included and extended to a division of the funds obtained from Mrs. Mar
 
 *793
 
 tha Kent in the said robbery, if any funds were obtained, that any act or declaration of any one of the conspirators performed or done after the said Mrs. Martha Kent had been robbed, but before a division or disposition of the proceeds of the robbery had taken place between the said conspirators, is binding on all of the said conspirators, and the act of one is the. act of all. * * * ” In a preceding part of the charge, the court had charged the jury that the act or declaration, to be binding on all of the conspirators, must have been done in furtherance of the conspiracy, or in prosecution of the common object and design for which they combined together, and furthermore that there can be no criminal responsibility on the part of a conspirator for a death resulting from something, not fairly within the common enterprise.
 

 The charge squarely submits to the jury the question of the existence of a conspiracy, and whether the conspiracy included a division of the gains, and the consequence of such inclusion, with appropriate instructions as to when the act or declaration of one conspirator should be deemed the act of all.
 

 The court, charging as to the lapse of time between the robbery and the homicide and the absence of one or more of the conspirators from the scene of the killing, after instructing the jury, as appears in the first paragraph of the charge in the opinion in the Taylor Case, where two or more persons combine together to commit an unlawful act, and a homicide results, each is criminally responsible for the act of his associates, if committed in furtherance, or in prosecution, of the common design, instructed the jury as follows: “And the rule is the same in such cases whether or not the person sought to be held was present at the time of the homicide, and whether he or a co-conspirator did the deed. And it is not affected by the fact that homicide was not the result intended, or within the contemplation of the parties as a part of the original design.”
 

 This instruction was in the charge in the Taylor Case, which charge, as relates to a homicide, resulting in the furtherance of a conspiracy to commit a felony, as here, was generally approved as correct. There is no error in the instruction here given. The distinction between principal and accessory has no application in this case. The perpetrator of the homicide, when the homicide is committed in furtherance of the conspiracy, is the agent of his eoconspirator, whether the eoconspirator be present or absent from the scene of the homicide. The judge had before him, when he gave his charge, a case in which all the evidence tended to show that the division of the gains was to he made as soon as practicable, the division having been actually made within some ten hours after the robbery and the.murder which followed the robbery by a few minutes. Therefore there is nothing in the complaint with reference to the lapse of .time between the robbery and the division of gains.
 

 As to the complaint that the court commented on the facts in his charge to the jury, counsel have pointed out no such comment, and we fail to find any. It is true that the court, in order to relieve the charge of abstruseness, and to convey a correct idea of ithe law to the jury, has stated certain facts hypothetically. This, however, is permissible, and is a manner of expression, not uncommonly found in'the criminal part of the common law, which part prevails in this state.
 

 
 *795
 
 Bill No. 16 was taken by Conner. It is a general exception to the exposition of the law by the count in its instructions- to the jury as to “reasonable doubt, murder, principals, conspiracy and malice.” No alleged error whatever is pointed out in the bill. None was pointed out at the time the court’s charge was delivered. In fact, $.t that time, as appears from the transcription of the stenographic notes, made part of the bill, no exception was reserved, or objection made, to the charge on reasonable doubt, murder, and malice, but only to the court’s statement of the law of conspiracy, and as to the right of the court to charge on conspiracy at all, none being charged in the bill of indictment, and to the court’s statement of the law of principals. The court, however, in a spirit
 
 o£
 
 mercy, has .signed the bill as presented, but, notwithstanding the court’s signature, it is manifest that the exception is of too general a nature to be of avail to its taker. State v. Robinson, 143 La. 543, 78 So. 933, and authorities cited in passing on the preceding bill on conspiracy. We may say, however, that, recognizing that this is a capital case, we have carefully examined the charge of the court, in the respects complained of, and find that it is free from error.
 

 Bill of exception No. 15, by Conner, and No. 11, by Franklin, relate to the refusal of the court to give four special charges, one on accessories, one on reasonable doubt, one on conspiracy, and one on circumstantial evidence. The charge on. accessories was refused, because it was not pertinent to the issues in the case, and the remaining special charges were refused, because they were covered by the general charge.
 

 There was no occasion for the court to charge on accessories, meaning accessories before the fact, to which the special charge on accessories is devoted. There is no evidence in the record fending to show that any one of the defendants aided, assisted, or advised the killing of Blumstein; The takers of this, bill are either guilty, because of their responsibility as members of a conspiracy, or they are not guilty, either as principals or accessories. To have given the charge on accessories
 
 could
 
 have served
 
 only to
 
 confuse the jury. The case of State v. Rodosta, 173 La. 623, 138 So. 124, cited by .counsel for-Franklin, has no pertinency here. There, the-per curiam of the trial judge showed that there was evidence upon which to base a charge on accessories. As to the remaining special charges, the trial judge was correct. A careful inspection of his general charge shows that these charges were substantially included therein. There is no right to demand a special charge, when there is no evidence for the jury to consider in connection, with it. State v. Suire, 142 La. 101, 76 So. 254. There is no right to demand a special charge, covered by the general charge. Code Cr. Proc. art. 390; State v. Marsalise, 172 La. 796, 135 So. 361; State v. Nahoum, 172 La. 83, 133 So. 370.
 

 Bill No. 13, by Franklin, and bill No. 3, by Terrell, were reserved to the overruling of motions for new trials. Conner also-filed a motion for a new trial, which was. overruled, but the record does not disclose-that a -bill of exceptions to the ruling was signed, and therefore the motion is not brought here for review, although it appears, in the record. State v. Shepherd, 123 La. 581, 49 So. 201; State v. Evans, 135 La. 891,
 
 *797
 
 66 So. 259. The motion in behalf of Terrell presents nothing for consideration that has not already been considered in his behalf or in behalf of one of the other defendants, and overruled. The motion in behalf of Eranklin presents nothing for review in this court that has not already been considered, except the following: That the jury was prejudiced against him, a man of color, and did not consider the evidence in the case, as appears from the fact that they returned a verdict in a case, requiring four days to try, within eighteen minutes. The record does not disclose any prejudice or bias whatever against Eranklin or the remaining defendants. The fact, if so (it not being established that the jury returned a verdict within eighteen ¡minutes), is not significant of undue haste or bias. Such a return is not extraordinary. Juries have the faculty of considering the evidence as the trial progresses. There is no law requiring a jury to take more time than is necessary to return a verdict. State v. Le Blanc, 116 La. 822, 41 So. 105; State v. Turner, 165 La. 657, 115 So. 814; State v. Nahoum, 172 La. 83, 133 So. 370. While Conner has not placed himself in position to have his motion for a new trial reviewed, it may be said that there was no occasion for him to have done so, for it presents nothing reviewable by this court, which he has not brought up for review by bills of exceptions to the specific rulings, and which have been considered.
 

 The verdict of the jury and the sentence of the court are affirmed.
 

 ODOM, J., dissents.