81 So.2d 410

### STATE of Louisiana

v.

### Richard Eugene BIEGERT alias Doctor Eric R. Hamill.

No. 42241.

April 25, 1955.

Rehearing Denied May 23, 1955.

Boards of Civil Service personnel on their own motion. Pargraph (O) (4) declares that these investigations shall be public.

Ralph L. Roy, Baton Rouge, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., J. St. Clair Favrot, Dist. Atty., Jack P. F. Gremillion, Asst. Dist. Atty., Thomas B. Pugh, Asst. Dist. Atty., Baton Rouge, for appellee.

FOURNET, Chief Justice.

The defendant, Richard Eugene Biegert, alias Dr. Eric C. Hamill, is appealing from his conviction under a Bill of Information charging him with the violation of LSA-R. S. 40:962 et seq., "in that he had in his possession certain quantities of narcotic drugs, contrary to the form of the Statutes of the State of Louisiana, in such cases made and provided," and from his sentence under such conviction to serve ten years at hard labor in the Louisiana State Penitentiary. For the reversal of his conviction and sentence he relies on numerous errors

allegedly committed during the course of his trial, to which timely objections were made, as preserved in bills of exceptions which have been perfected for purposes of this appeal.

In order that the issues presented for our decision in these various bills may be clearly understood, we think it well to give some of the background under which the charge was brought.

It appears that the accused, originally from California, while in New Orleans during the Mardi Gras season of 1954, was mistakenly considered to be a doctor. This incident set in force a chain of events that culminated in his establishment of a make-shift doctor's office in Denham Springs, Louisiana, Livingston Parish, where from some time in the early part of June, 1954, until he was arrested in Baton Rouge, Louisiana, on July 3, 1954, he undertook to treat patients in the guise of a doctor. While acting out this impersonation, he secured a number of prescriptions for narcotics from a reputable doctor in Denham Springs and one from a reputable doctor in Ponchatoula, Louisiana, the pretense being that he had not yet secured his narcotic permit. Some of these prescriptions were issued in the name of the "patients" being "treated" by the accused, and one was secured by the accused himself on April 5, 1954, under the alias of Dr. Eric C. Hamill. The prescriptions were then filled by druggists in Denham Springs and Ponchatoula.

On July 3, 1954, acting on information that the defendant was engaged in the illegal practice of medicine, two teams of state police officers were endeavoring to locate him, one team in Livingston Parish and the other in the Parish of East Baton Rouge. He was arrested in Baton Rouge, Louisiana, shortly after noon on that day and taken to State Police Headquarters, where he voluntarily and freely gave to the questioning officers a full and complete confession in writing covering his illegal practice as a doctor. After this confession had been signed a question arose as to the location of the "medical bag" used by the accused in his "practice," and when it developed the bag was not in the back of his car, as claimed, Biegert admitted it was at the home of a friend, from which place it was recovered by the officers. When the bag was opened at headquarters, the accused, who had previously admitted it contained a small quantity of narcotics, voluntarily indicated the bottles containing the drugs and these were separated from the other equipment in the bag and later tested in confirmation of his statement that they were narcotics.

Inasmuch as Bills of Exceptions Nos. 1, 2, 3, 5, 6, and 7 are all interrelated, they will be treated together. They were reserved when the trial judge permitted the introduction in evidence of the confession with respect to the illegal practice of medicine (Bill No. 1); when one of the officers

testified with respect to statements made by the accused describing the manner in which he had secured the narcotics and how they had been administered by him (Bills Nos. 2 and 3); and when the doctors and druggists from whom the prescriptions had been secured were permitted to testify they would have furnished no such prescriptions had they known the accused was an imposter (Bills Nos. 5, 6, and 7). The objection to this evidence was predicated upon the contention that it was immaterial to a charge of "possession of narcotics," and, further, that it sought to establish a crime other than the one charged.

There was no question but that the written confession of illegal practice of medicine, as well as the oral admissions with respect to the manner in which the narcotics had been secured and dispensed, were freely and voluntarily given by the accused, and the trial judge admitted evidence to establish this fact and to lay the proper foundation for their introduction both out of the presence of the jury and after the jury had been recalled. Consequently, inasmuch as this written confession and the oral admissions contained acknowledgments of facts that had a tendency to establish guilt of the crime charged, that is, the unlawful possession of narcotics, they were admissible in their entirety so that they might be presented to the jury for their probative value. State v. Rini, 151 La. 163, 91 So. 664; State v.

Dreher, 166 La. 924, 118 So. 85; State v. Taylor, 173 La. 1010, 139 So. 463; and State v. Terrell, 175 La. 758, 144 So. 488. These facts tended to establish that the narcotics had been secured through fraud and deceit, disclosing he had not only obtained possession of them unlawfully, but also that he had guilty knowledge.

Bill of Exceptions No. 4, based on the contention that the proper foundation had not been laid for the admission of statements of the defendant with respect to the whereabouts of his "bag," is clearly without merit in view of the trial judge's statement in his per curiam, which, in the absence of proof to the contrary must be accepted as true, that "The evidence offered to lay the foundation for the admissibility of the statement or alleged confession was first taken out of the presence of the jury and then in the presence of the jury." Moreover, it was not only shown beyond any doubt to have been freely and voluntarily given, but the accused himself admitted he was "most happy to cooperate with them [the police] in any way, shape or form." (Brackets added.)

The motion for a new trial, the overruling of which forms the basis for Bill of Exceptions No. 8, consists of a reiteration of the errors just disposed of, which, as just shown, are without merit. In addition, there is the assertion that the verdict is contrary to the law and the evidence, the

argument being that inasmuch as the drugs had been obtained under prescriptions issued by reputable physicians the accused was an "authorized possessor of the narcotics" under the statute condemning the possession of narcotics as a crime, and, more particularly, LSA–R.S. 40:971, which provides that "A person to whom or for whose use any narcotic drug has been prescribed, sold, or dispensed, by a physician, dentist, apothecary, or other person authorized under the provisions of R.S. 40:-965, * * * may lawfully possess it only in the container in which it was delivered to him by the person selling or dispensing the same."

■■ In view of the facts adduced during the trial of this case, which show the accused knowingly secured these drugs through fraud and deceit, and thus possessed them illegally, this bill is clearly without merit. In addition, the exhibits that have been filed in this court disclose the narcotics to be contained in four bottles. Two of these disclose they were filled by druggists under a doctor's prescription, but two bear no indication they were issued by a druggist or that they were issued under a prescription. In addition, one of those bearing proper labels, discloses it was not issued to the accused, but, instead, to one Albert Pope, and the other discloses it was issued on April 5, 1954, to the accused in his assumed name of Dr. Eric C. Hamill. In evidence, also, are four original pre-

scriptions purporting to cover the narcotics in the four containers. One of these shows authority for the issuance of the prescription to "Dr. Hamill" on April 5, 1954, but the other three were issued to Albert Pope, and not to the accused. It is obvious, therefore, that even if these narcotics are in the original containers in which they were delivered by the druggist dispensing them, and two do not in themselves evidence this, three of the bottles containing the drugs were not issued to the accused for his use, or to him, and he could not, therefore, within the meaning and intendment of this article, have them in lawful possession.

■ The last bill, reserved to the denial of a motion in arrest of judgment, based on the contention the Bill of Information fails to allege the accused was "unlawfully" in possession of narcotic drugs, is equally without merit. While the word "unlawful" is not itself used in this bill, words or language of similar or equivalent import are used, and this is sufficient under the express provisions of Article 227 of the Code of Criminal Procedure. LSA–R.S. 15:227. Furthermore, this same code provides that "No indictment shall be held insufficient for want of the averment of any matter unnecessary to be provided, nor for the omission * * * of the word 'unlawfully' * * *." LSA–R.S. 15:234.

The conviction and sentence are affirmed.